IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SONY BMG MUSIC ENTERTAINMENT, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 07-cv-11446-NG |
| v. | ) ) ) | |
| JOEL TENENBAUM, | ) ) | |
| Defendant. | ) ) | |

**UNITED STATES OF AMERICA'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION FOR NEW TRIAL OR REMITTITUR AND IN DEFENSE OF THE CONSTITUTIONALITY OF THE STATUTORY DAMAGES PROVISION OF THE COPYRIGHT ACT, 17 U.S.C. § 504(c)**

## TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................... 1

BACKGROUND. ...................................................................................................... 2

    I.     STATUTORY BACKGROUND................................................................ 2

    II.    PROCEDURAL BACKGROUND.............................................................. 4

ARGUMENT. .......................................................................................................... 6

    I.     THIS COURT SHOULD FIRST DETERMINE WHETHER THE
          CONSTITUTIONAL QUESTION RAISED BY DEFENDANT CAN
          BE AVOIDED. ......................................................................................... 6

    II.    THE COPYRIGHT ACT'S STATUTORY DAMAGES PROVISION
          SATISFIES DUE PROCESS. .................................................................. 7

          A.     Courts Examine Statutory Damages Awards Under The Standard
                Articulated By The Supreme Court in *Williams*. ........................................ 8

          B.     The Copyright Act's Statutory Damages Provision Satisfies The
                *Williams* Standard. .................................................................................. 12

CONCLUSION. ...................................................................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'n, L.P.*,
    329 F. Supp. 2d 789 (M.D. La. 2004). ...................................................................... 9, 11

*Atlantic Recording Corp. v. Anderson*,
    2008 WL. 2316551 (S.D. Tex. March 12, 2008). ........................................................ 10

*BMW of North Am., Inc. v. Gore*,
    517 U.S. 559 (1996). ......................................................................... 8, 9, 10, 11

*Bisbal-Ramos v. City of Mayaguez*,
    467 F.3d 16 (1st Cir. 2006). ........................................................................... 6

*Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*,
    492 U.S. 257 (1989). ................................................................................ 12

*Buchanan v. Maine*,
    469 F.3d 158 (1st Cir. 2006). ......................................................................... 6

*Burrow-Giles Lithographic Co. v. Sarony*,
    111 U.S. 53 (1884). ............................................................................... 14

*Capitol Records, Inc. v. Alaujan*,
    626 F. Supp. 2d 152 (D. Mass. 2009). ........................................................... 5, 18

*Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*,
    545 F. Supp. 2d 768 (N.D. Ill. 2008). ....................................................... 11, 18

*In re Charter Communications, Inc.*,
    393 F.3d 771 (8th Cir. 2005). ....................................................................... 17

*City of Burbank v. Lockheed Air Terminal Inc.*,
    411 U.S. 624 (1973). ............................................................................... 22

*Correa v. Hosp. San Francisco*,
    69 F.3d 1184 (1st Cir. 1995). ......................................................................... 7

*DirecTV, Inc. v. Cantu*,
    2004 WL. 2623932 (W.D. Tex. Sept. 29, 2004). ......................................................... 9

*Douglas v. Cunningham,*
    294 U.S. 207 (1935)................................................................... 12

*Eldred v. Ashcroft,*
    537 U.S. 186 (2003)................................................................... 14

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,*
    344 U.S. 228 (1952)................................................... 10, 14, 17, 18

*Feltner v. Columbia Pictures Television, Inc.,*
    523 U.S. 340 (1998)............................................................ 2, 6, 13

*Lapina v. Williams,*
    232 U.S. 78 (1914)..................................................................... 22

*Lapine v. Town of Wellesley,*
    304 F.3d 90 (1st Cir. 2002).......................................................... 21

*Lin v. Mukasey,*
    521 F.3d 22 (1st Cir. 2008).......................................................... 21

*Lowry's Reports, Inc. v. Legg Mason, Inc.,*
    302 F. Supp. 2d 455 (D. Md. 2004). ..................................... 9, 10, 14

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
    485 U.S. 439 (1988)..................................................................... 6

*McCaughn v. Hershey Chocolate Co.,*
    283 U.S. 488 (1931)................................................................... 22

*Philip Morris USA v. Williams,*
    549 U.S. 349 (2007)................................................................... 20

*Texas v. Am. Blastfax, Inc.,*
    121 F. Supp. 2d 1085 (W.D. Tex. 2000)...................................... 10, 11

*Sony BMG Music Entm't v. Tenenbaum,*
    F. Supp. 2d 2009 WL 4547019 (D. Mass. Dec. 7,2009)............ 16, 17, 19, 23

*St. Louis, I.M. & S. Ry. Co. v. Williams,*
    251 U.S. 63 (1919)............................................................. passim

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
    538 U.S. 408 (2003)..................................................................... 8

*United States v. Citrin*,
    972 F.2d 1044 (9th Cir. 1992). .................................................................. 11

*Zomba Enters., Inc. v. Panorama Records, Inc.*,
    491 F.3d 574 (6th Cir. 2007). ............................................................. 11, 12

## Statutes & Rules

17 U.S.C. § 101 .................................................................................................. 17

17 U.S.C. § 102(a). ............................................................................................ 23

17 U.S.C. § 504(c). ..................................................................................... passim

Fed. R. Civ. P. 50. ............................................................................................... 5

## Public Laws & Legislative History

Pub. L. No. 94-553, § 22 (1976). ....................................................................... 3

Pub. L. No. 105-147 (1997). ............................................................................. 20

Pub. L. No. 106-160, § 2 (1999). ................................................................ 3, 4, 23

H.R. Rep. 105-339 (1997) ................................................................. 5, 16, 22, 23

H.R. Rep. 106-216 (1999) .......................................................................... passim

## INTRODUCTION

In a post-trial motion, Defendant has made an as-applied challenge to the constitutionality of the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c). Defendant has moved the Court to either (1) grant a new trial because the Court improperly decided the fair use issue and/or refused to admit certain evidence; (2) reduce the statutory damages award to the minimum allowed under the Copyright Act on the ground that the jury's award is unconstitutional; or (3) remit the statutory damages award under the common-law doctrine of remittitur. Intervenor, the United States, files this memorandum to defend the constitutionality of 17 U.S.C. § 504(c).

The United States does not express an opinion regarding whether Defendant has satisfied the standard for remittitur or is entitled to a new trial under Rule 59 of the Federal Rules of Civil Procedure due to alleged errors in the Court's fair use or evidentiary rulings. Under the doctrine of constitutional avoidance, however, the United States respectfully submits that this Court should resolve these non-constitutional grounds for challenging the jury's verdict *before* deciding the constitutional question.

If it is necessary to reach the constitutional question, then Defendant's motion should be rejected because Congress' carefully crafted statute satisfies the Due Process Clause. In assessing whether the jury's statutory damages award violates due process, the Court should rely on the standard articulated by the Supreme Court in *St. Louis, I.M. & S. Railway Co. v. Williams*, 251 U.S. 63, 66–67 (1919), not the standard courts use for assessing punitive damages awards. The *Williams* standard is significantly more deferential and less demanding than the standard applicable to punitive damages. Under *Williams*, a court is to examine whether an award within a statutory range is "so severe and oppressive as to be wholly disproportioned to the offense and

obviously unreasonable" by considering whether Congress has given "due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [the law]." *Williams*, 251 U.S. at 67.

The application of the Copyright Act's statutory damages provision in this case withstands constitutional scrutiny under the test adopted by the Supreme Court in *Williams*. In enacting the current statutory damages provision of the Copyright Act, Congress has given such due regard to the public's interests, the opportunity to repeatedly commit this statutory violation, and the need to ensure adherence to the law. *Id*. at 67. Congress has established a regime to protect intellectual property, with origins that date back to before the beginning of the Republic. The current damages range provides compensation for copyright owners because, *inter alia*, there exist situations in which actual damages are hard to quantify. Furthermore, in establishing the range, Congress took into account the need to deter the millions of users of new media from infringing copyrights in an environment where many violators believe they will go unnoticed. The harms Congress sought to address, moreover, are not negated merely because an infringer does not seek commercial gain. Accordingly, the statutory range specified by Congress for a copyright infringement satisfies due process.

## BACKGROUND

## I.     STATUTORY BACKGROUND

The remedy of statutory damages for copyright infringement dates back to the Statute of Anne in 1710. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 349 (1998). "In 1783, the Continental Congress passed a resolution recommending that the States secure copyright protections for authors." *Id*. at 350. Three of the twelve States that responded to this

2

resolution "specifically authorized an award of damages from a statutory range, just as § 504(c) does today." *Id*. at 350–51.

An award of statutory damages for copyright infringement was first authorized under U.S. federal law almost immediately following the adoption of the Constitution. Under the Copyright Act of 1790, enacted by the First Congress, each infringer of a copyright was liable for "the sum of fifty cents for every sheet which shall be found in his or their possession." 1 Stat. 124, 125 (1790). Each subsequent modification of the Copyright Act has maintained a statutory damages provision.

The statutory damages provision at issue in this case was first enacted as part of the Copyright Act of 1976, and the amounts have been adjusted twice since that time, most recently in 1999. *See* Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, § 2 (1999). Under the Copyright Act of 1976, and the law in effect today, "an infringer of copyright is liable for either — (1) the copyright owner's actual damages and any additional profits of the infringer" or (2) "statutory damages." 17 U.S.C. § 504(a). The copyright owner may elect to recover statutory damages instead of actual damages and profits at any time before final judgment is rendered. *Id*. § 504(c)(1).

Under the 1976 law, if the copyright violation was not willful, the copyright owner was entitled to recover statutory damages of between $250 and $10,000 per infringed work. Pub. L. No. 94-553, § 22 (1976). If the violation was willful, the maximum statutory damages award increased to $50,000 per work. *Id*. In the 1999 amendment, Congress increased the statutory damages range to its current level: between $750 and $30,000 per infringed work in cases involving non-willful violations, with a maximum of $150,000 per infringed work for a willful

violation.  *See* Pub. L. No. 106-160, § 2; *see also* 17 U.S.C. 504(c).[1]  Congress explained that the

increase was necessary because:

> By the turn of the century the Internet is projected to have more
> than 200 million users, and the development of new technology
> will create additional incentive for copyright thieves to steal
> protected works. . . .  As long as the relevant technology evolves in
> this way, more piracy will ensue.  Many computer users are either
> ignorant that copyright laws apply to Internet activity, or they
> simply believe that they will not be caught or prosecuted for their
> conduct.  Also, many infringers do not consider the current
> copyright infringement penalties a real threat and continue
> infringing, even after a copyright owner puts them on notice that
> their actions constitute infringement and that they should stop the
> activity or face legal action.

H.R. Rep. 106-216, at 3 (1999).

## II.    PROCEDURAL BACKGROUND

On August 7, 2007, Plaintiffs brought suit against Defendant pursuant to the Copyright

Act.  *See* Compl. ¶ 1.  They alleged Defendant infringed on their copyrights in various sound

recordings by using an online media distribution system to download, distribute, and make

available for distribution the copyrighted works.  *Id.* ¶ 13.

Defendant filed a motion to dismiss the Complaint on March 9, 2009, asserting, *inter*

*alia*, that the Copyright Act's statutory damages provision violates the Due Process Clause

because the damages it authorizes are disproportionate to the harm caused by infringement.  *See*

Def.'s Mem. in Supp. of Mot. to Dismiss, at 6–10.  With the Court's permission, the United

States intervened in the action and filed a brief defending the constitutionality of 17 U.S.C.

---

[1]An intermediate amendment of the 1976 Act set the range at $500 to $20,000, with a
willfulness enhancement of up to $100,000.  102 Stat. 2853, 2860 (1988).

4

§ 504(c).  The Court subsequently determined Defendant's due process challenge was premature

and deferred deciding the issue unless and until a jury awarded statutory damages against

Defendant.  *Capitol Records, Inc. v. Alaujan*, 626 F. Supp. 2d 152, 154 (D. Mass. 2009).

The matter was tried before a jury beginning on July 27, 2009.  At the close of the

evidence, the Court granted Plaintiff's Motion for Judgement as a Matter of Law, *see* Fed. R.

Civ. P. 50, on the issue of infringement based on Defendant's admission on cross-examination

that he had downloaded and distributed the thirty sound recordings at issue in the case.

Electronic Order (July 31, 2009).  The jury returned a verdict on July 31, 2009, finding

Defendant's infringement was willful and awarding $22,500 in statutory damages for each of the

thirty sound recordings Defendant infringed, for a total of $675,000.  Jury Verdict (July 31,

2009).  The Court subsequently entered judgment on the jury's verdict and an injunction

prohibiting Defendant from further infringing Plaintiffs' sound recordings.  Judgment (Dec. 7,

2009).

Defendant moved for a new trial or remittitur on January 4, 2010, challenging the

constitutionality of the Copyright Act's statutory damages provision as applied here.  Def.'s Mot.

and Mem. for New Trial or Remittitur ("Def.'s Mem."), at 11–25.  Alternatively, Defendant

asserts that the Court should award a new trial because the Court improperly decided the fair use

issue, refused to admit certain evidence, and improperly instructed the jury; or should remit the

statutory damages award under the common law doctrine of remittitur.  Def's Mem. at 1–10,

23–26.  Now that the constitutional issue has been raised again, the United States files this brief

to defend the constitutionality of a federal statute.

5

## ARGUMENT

**I.    THIS COURT SHOULD FIRST DETERMINE WHETHER THE CONSTITUTIONAL QUESTION RAISED BY DEFENDANT CAN BE AVOIDED**

This Court should reach the merits of the constitutional question Defendant has raised only if resolution of that question is necessary to decide the case.  *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Buchanan v. Maine*, 469 F.3d 158, 172 (1st Cir. 2006) ("[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.").

In this case, the Court may be able to avoid the constitutional question by deciding Defendant's motion on grounds that do not implicate the constitutionality of the Copyright Act's statutory damages provision or the constitutionality of the jury award of $22,500 per infringement.  For example, although the United States does not express any position on these issues, the Court may agree with Defendant's argument that the Court erred in refusing to admit certain evidence or that the jury instructions were improper.  *See* Def's Mem. at 8–10, 23–25. Or the Court may decide that Defendant has met the standard for common-law remittitur.[2]  *See*

---

[2]Although the Supreme Court has held that there is a Seventh Amendment right to a jury trial to decide the proper damages award in a copyright case, *see Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998), neither the Copyright Act nor *Feltner* eliminates the discretion a trial judge otherwise has under the common law to remit a jury award of statutory damages, so long as the remitted damages remain within the statutory range.  *See Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 26–27 (1st Cir. 2006) (noting a trial court may remit a jury's compensatory damages award even when there is a Seventh Amendment right to a jury trial so long as it offers a plaintiff the opportunity to accept the remitted amount or elect to have a new trial).

Def's Mem. at 25–26.  Should the Court remit the award to a figure lower than the $22,500 per infringement that the jury awarded, it would be unnecessary to answer the question of whether the particular $675,000 verdict in this instance is unconstitutional.  This discussion is not to suggest an answer of whether the award should be remitted in this particular case, but rather to suggest that an answer to such a question should precede any resolution of Defendant's constitutional arguments.

## II.    THE COPYRIGHT ACT'S STATUTORY DAMAGES PROVISION SATISFIES DUE PROCESS

Should the Court find it necessary to address Defendant's constitutional challenge, it should hold that an award pursuant to the Copyright Act's statutory damages provision comports with due process.  Indeed, the framework for awarding statutory damages under the Copyright Act, which requires imposition of a "just" award within the range established by Congress, 17 U.S.C. § 504(c)(1)), is as favorable to the Defendant (if not more favorable) than the constitutional standard set forth in *Williams*, under which a court may strike down a statutory award as a violation of due process only if it is "so severe and oppressive as to be wholly disproportioned to the offense [or] obviously unreasonable" because Congress has not given "due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [the law]."  *Williams*, 251 U.S. at 67.  It follows, therefore, that any award within the statutory range that a jury originally finds as "just," or that the Court awards after remitting the original jury award for being "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand," *see Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1197 (1st Cir. 1995) (discussing common law remittitur standard), necessarily satisfies the constitutional review

7

standard of *Williams*.  Accordingly, this Court should reject any attempt by Defendant to

challenge the constitutionality of the statutory damages provision.

A.    **Courts Examine Statutory Damages Awards Under The Standard
Articulated By The Supreme Court In *Williams***

Contrary to Defendant's assertion, *see* Def.'s Mem. at 15–18 (citing *BMW of North Am.,*

*Inc. v. Gore*, 517 U.S. 559, 574–75 (1996) and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538

U.S. 408, 418 (2003)), the Supreme Court's punitive damages jurisprudence does not "provide

additional guidance" in determining whether a statutory damages award violates the Due Process

Clause.  Rather, the applicable standard, and the only one that should be applied in this case, is

set forth in *St. Louis*, *I.M. & S. Railway Co. v. Williams*, a case that involved a due process

challenge to a statutory damages award.  251 U.S. at 64, 67 (holding that a statutory damages

award of $75, for a violation that resulted in actual damages of only 66 cents, was within the

statutorily-authorized range of $50 to $300 and did not violate due process).  The *Williams*

standard is quite distinct from, and much more deferential than, the framework articulated in

*Gore* and *State Farm*.[3]

The framework articulated in *Gore* and *State Farm* for assessing punitive damages is not

applicable to statutory damages because the two remedies are distinct.  Punitive damages are

awarded by a jury to punish a wrongdoer; the jury's discretion in choosing an amount is usually

unconstrained.  Statutory damages, on the other hand, exist in large part to compensate victims

---

[3]The *Gore* framework assesses an award of punitive damages based on (1) the degree of
reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential
harm suffered by the plaintiff and the punitive damages award; and (3) the difference between
the punitive damages awarded by the jury and civil penalties authorized or imposed in
comparable cases.  *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).

of wrongdoing in areas where actual damages are difficult to calculate or prove. *See Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 460 (D. Md. 2004). The discretion in choosing an amount of statutory damages, moreover, is constrained by the carefully crafted statute. As a result of these differences, statutory damages do not implicate the due process issues of fair notice and unconstrained discretion that concerned the Supreme Court in *Gore*, *see Gore*, 517 U.S. at 574 ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty[.]"); rather, a statutory damages provision by its nature puts individuals on notice of a specific range of damages to which they may be subject, *see id*. at 595 (Breyer, J., concurring) (noting the absence of "legislative enactments [in *Gore*] that classify awards and impose quantitative limits that would significantly cabin the fairly unbounded discretion created by the absence of constraining legal standards"); *Lowry's Reports*, 302 F. Supp. 2d at 460 ("The unregulated and arbitrary use of judicial power that the *Gore* guideposts remedy is not implicated in Congress' carefully crafted and reasonably constrained [Copyright] statute."); *DirecTV, Inc. v. Cantu*, 2004 WL 2623932, at *4–*5 (W.D. Tex. Sept. 29, 2004) (rejecting due process claim and distinguishing *Gore* from statutory damages context because "fair notice is not a concern here"); *Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'n, L.P.*, 329 F. Supp. 2d 789, 808–10 (M.D. La. 2004) (same).

Indeed, attempting to apply the *Gore* framework to statutory damages further demonstrates that ill fit. It does not make sense in the context of statutory damages to examine the disparity between the actual damages suffered by a plaintiff and the punitive damages award as required by the second *Gore* guidepost, *see Gore*, 517 U.S. at 575, contrary to Defendant's

9

repeated attempts to have the Court make such a comparison, *see* Def.'s Mem. at 13–14, 16.

Statutory damages may only be awarded when a plaintiff forgoes the right to recover actual

damages, *Lowry's Reports*, 302 F. Supp. 2d. at 460, and are in fact, a substitute or proxy for

actual damages.  Furthermore, statutory damages compensate those wronged in areas in which

actual damages are hard to quantify in addition to providing deterrence to those inclined to

commit a public wrong.  *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233

(1952) ("The statutory rule, formulated after long experience, not merely compels restitution of

profit and reparation for injury but also is designed to discourage wrongful conduct."); *see also,*

*e.g., Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000) (The Telephone

Consumer Protection Act "was meant to *take into account the difficult to quantify business*

*interruption costs* imposed upon recipients of unsolicited fax advertisements, effectively deter

the unscrupulous practice of shifting these costs to unwitting recipients of junk faxes, and

provide adequate incentive for an individual plaintiff to bring suit on his own behalf.")

(quotation omitted).  Defendant's suggestion, moreover, that the actual harm in this case can be

measured to the tune of 35 cents (in lost profits) or 99 cents (for a lost sale) for each of the 30

sound recordings Defendant infringed, *see* Def.'s Mem. at 13–14, ignores the multiplying effect

of peer-to-peer file sharing.  *See Atlantic Recording Corp. v. Anderson*, 2008 WL 2316551, at *9

(S.D. Tex. March 12, 2008) ("[T]here is no way to ascertain the precise amount of damages

caused by Defendant's actions in not only improperly downloading Plaintiffs' Copyrighted

Recordings himself but also subsequently distributing some or all of Plaintiffs' Copyrighted

Recordings to a vast community of other persons on KaZaA.").

A further indication that the Supreme Court did not intend for its punitive damages jurisprudence to apply to statutory damages is that the third *Gore* guidepost specifically compares a punitive damages award to civil penalties available for comparable conduct. *See Gore*, 517 U.S. at 575; *id*. at 583 ("[A] reviewing court engaged in determining whether an award of punitive damages is excessive should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." (quotations omitted)). Thus, in *Gore*, the Supreme Court differentiates statutory damages based on legislative judgments, which are to be accorded "substantial deference," from punitive damages awards. *Id*. Indeed, applying this guidepost from *Gore* in the context of statutory damages would be a tautology: a statutory damages award is by definition within the statutory range set by Congress.[4]

Courts have consistently applied the *Williams* standard, rather than punitive damages jurisprudence, in assessing the constitutionality of statutory damages provisions. *See Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 587–88 (6th Cir. 2007) (concluding application of the Copyright Act's statutory damages provision did not violate the *Williams* standard); *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 777–78 (N.D. Ill. 2008) (applying the *Williams* standard to uphold the statutory damages provision of the Telephone Consumer Protection Act); *Accounting Outsourcing*, 329 F. Supp. 2d at 808–10 (same); *Am. Blastfax, Inc.*, 121 F. Supp. 2d at 1090–91 (same); *see also United States v. Citrin*,

---

[4]Defendant misconstrues the third *Gore* guidepost. The guidepost compares a jury's punitive damages award to the "civil or criminal penalties" available by statute for similar conduct, *Gore*, 517 U.S. at 583–84, not, as Defendant suggests, *see* Def.'s Mem. at 17, to other jury punitive damages awards in similar cases. The fact that Defendant is forced to rewrite the third *Gore* guidepost to meaningfully apply it in this case further demonstrates that the *Gore* framework is not applicable to statutory damages awards.

972 F. 2d 1044, 1051 (9th Cir. 1992) ("A statutorily prescribed penalty violates due process

rights only where the penalty prescribed is so severe and oppressive as to be wholly

disproportioned to the offense and obviously unreasonable." (quotation omitted)).  This Court

likewise should apply the *Williams* standard in assessing the constitutionality of the application

of the Copyright Act's statutory damages provision at issue in this case.[5]

**B.    The Copyright Act's Statutory Damages Provision Satisfies The *Williams* Standard**

The *Williams* standard is extremely deferential and does not turn on a particular ratio

between statutory and actual damages.  *See Zomba*, 491 F.3d at 587 (describing the *Williams*

standard as "extraordinarily deferential—even more so than in cases applying abuse-of-

discretion review") (citing *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935) ("[E]mployment

of the statutory yardstick, within set limits, is committed solely to the court which hears the case,

and this fact takes the matter out of the ordinary rule with respect to abuse of discretion.")).[6]

Rather, "[t]he ultimate question" according to *Williams* is "whether a penalty" within the

statutory range is "so severe and oppressive as to be wholly disproportioned to the offense and

---

[5] In addition to the punitive damages framework set forth in *Gore*, Defendant also points to the "proportionality" standard applied under the Excessive Fines Clause of the Eighth Amendment.  *See* Def.'s Mem. at 17–18.  The Excessive Fines Clause, however, does not apply in this case because the action was instituted by private parties and the United States does not have a right to receive a share of the statutory damages award.  *See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 264 (1989) (holding the Eighth Amendment does not "constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded").

[6] The Sixth Circuit did use an objective ratio test in *Zomba* and found that a ratio of 44:1 of statutory damages to actual damages did not violate due process given that the ratio in *Williams* was 113:1.  *See Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 U.S. 574, 588 (6th Cir. 2007).

12

obviously unreasonable."  251 U.S. at 66-67.  To make such a determination, a court is to examine whether Congress has given "due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [the law]."  *Id*. at 67.  Defendant's constitutional attack on an award within the Copyright Act's statutory range fails under this standard and should be rejected.[7]

Dating back to the middle of the 17th century, "the common law recognized an author's right to prevent the unauthorized publication of his manuscript" because of "the principle that the manuscript was the product of intellectual labor and was as much the author's property as the material on which it was written."  *Feltner*, 523 U.S. at 349.  The first Congress recognized the need to protect this intellectual labor by enacting a federal statutory damages provision for copyright infringement in 1790.  *See* Copyright Act of 1790, 1 Stat. 124, 125.  Federal copyright law has authorized the awarding of statutory damages for copyright infringement in some form ever since, and the Court should defer to Congress's historical application of these provisions. *See* Staff of House Comm. On The Judiciary, 87th Cong., Report of the Register of Copyrights on The General Revision of The U.S. Copyright Law (Comm. Print 1961), at ix (tracing the federal copyright statute from 1790 to its general revisions in 1831, 1870, and 1909).[8]

---

[7]Assessment of a statutory damages award under the *Williams* standard focuses on Congress' purpose in enacting the particular statute at issue.  Therefore, it is of no value to compare the statutory damages award imposed in *Williams* with the award imposed here, as Defendant urges the Court to do, *see* Def.'s Mem. at 12–14.  The statute at issue in *Williams* and the Copyright Act serve different purposes and protect against different harms.

[8] This report, written in 1961, was part of an extensive review, by the Copyright Office, of the history, purposes, and effects of the Copyright Act.  It culminated in Congress' enactment of the 1976 Copyright Act.

13

The Supreme Court has emphasized the weight to be afforded to the historical practices of Congress in copyright, especially the First Congress, in evaluating constitutional challenges to the Copyright Act. In *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 57 (1884), the Court upheld the extension of copyright protection to photographs under the Copyright Clause and in so doing held that "[t]he construction placed upon the constitution by the first act of 1790 and the act of 1802, by the men who were contemporary with its formation, many of whom were members of the convention which framed it, is of itself entitled to very great weight, and when it is remembered that the rights thus established have not been disputed during a period of nearly a century, it is almost conclusive." *Id*. at 57. More recently, the Court reaffirmed, in upholding the constitutionality of copyright term extensions, that "[t]o comprehend the scope of Congress' power under the Copyright Clause, a page of history is worth a volume of logic." *Eldred v. Ashcroft*, 537 U.S. 186, 199 (2003) (quotation omitted).

The Copyright Act's statutory damages provision serves both to compensate and deter. Congress established a scheme to allow copyright owners to elect to receive statutory damages for copyright infringement instead of actual damages and profits because of the difficulty of calculating and proving actual damages. *F.W. Woolworth*, 344 U.S. at 231 (noting statutory damages are intended to allow "the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits"); *Lowry's Reports*, 302 F. Supp. 2d at 460 ("Statutory damages exist in part because of the difficulties in proving—and providing compensation for—actual harm in copyright

14

infringement actions.").[9]   As the Copyright Office explained in its 1961 report to Congress, the

need for statutory damages in the context of copyright infringement "arises from the

acknowledged inadequacy of actual damages and profits in many cases:

- The value of a copyright is, by its nature, difficult to establish, and the loss caused by an infringement is equally hard to determine.  As a result, actual damages are often conjectural, and may be impossible or prohibitively expensive to prove.

- In many cases, especially those involving public performances, the only direct loss that could be proven is the amount of a license fee.  An award of such an amount would be an invitation to infringe with no risk of loss to the infringer.

- The actual damages capable of proof are often less than the cost to the copyright owner of detecting and investigating infringements.

- An award of the infringer's profits would often be equally inadequate.  There may have been little or no profit, or it may be impossible to compute the amount of profits attributable to the infringement.  Frequently the infringer's profits will not be an adequate measure of the injury caused to the copyright owner."

Staff of House Comm. On The Judiciary, 87th Cong., Report of the Register of Copyrights on

The General Revision of The U.S. Copyright Law (Comm. Print 1961), at 102–03.

The inadequacy of actual damages and profits to compensate copyright owners is evident

under the circumstances of this case.  It is impossible for a copyright owner to calculate actual

damages when an online media distribution system is used to illegally distribute its copyrighted

sound recordings; the number of subsequent acts of infringement by computer users who

download illegal copies of the sound recordings from the original infringer is simply

---

[9]The compensatory component of statutory damages is reflected in Congress's concern that the 1999 amendment of the statutory damages range from the 1988 Amendments "reflect inflation over the past eleven years."  *See* H.R. Rep. 106-216, at 6 (1999).  Indeed, the increase in the range of statutory damages from the Copyright Act of 1976 to the 1999 amendment is consistent with inflation.  *See* CPI Inflation Calculator, *available at* http://data.bls.gov/cgi-bin/cpicalc.pl (last visited Jan. 15, 2010).

unknowable. Additionally, it is costly for owners of copyrighted sound recordings to detect and investigate copyright infringement because of the widespread nature of such infringement in today's world of advanced computer technologies. *See* H.R. Rep. 106-216, at 3 ("[C]opyright piracy of intellectual property flourishes, assisted in large part by today's world of advanced technologies.").

Furthermore, although Defendant makes much of the fact that his infringement was "not for profit," *see* Def.'s Mem. at 11, the harms to the owners of copyrighted sound recordings and to the public are not negated merely because an infringer using an online media distribution system does not seek commercial gain. Indeed, this Court recognized as much when it noted that "although the purpose of [Defendant's] file sharing may not have been 'commercial' in any classic sense, . . . from a consequential perspective the difference becomes harder to make out." *Sony BMG Music Entm't v. Tenenbaum*, ___ F. Supp. 2d ___, 2009 WL 4547019, at *11 (D. Mass. Dec. 7, 2009). Infringement without commercial gain can limit a copyright owner's (or their authorized licensees') ability to distribute legal copies of copyrighted sound recordings. *See* H.R. Rep. 105-339, at 5 (acknowledging the harm of infringement without commercial gain on businesses that depend on licensing agreements and royalties). It can also reduce a copyright owner's profits by permitting individuals who would otherwise be required to purchase copies of copyrighted sound recordings to obtain illegal copies for free. *See Sony BMG Music Entm't*, 2009 WL 4547019, at *11 ("[I]t is plain that consumers who regularly pay for music would shift to free downloads if given the chance.").

Infringement without commercial gain also harms the public because the high volume of infringement results in "lost U.S. jobs, lost wages, lower tax revenue, and higher prices for

16

honest purchasers of copyrighted [sound recordings]."  H.R. Rep. 106-216, at 3; *see also*

*Williams*, 251 U.S. at 66 (observing that the "[l]egislature may adjust [the] amount (of statutory

damages) to the public wrong rather than the private injury").  Defendant may view his actions

as "not morally wrong," Def.'s Mem. at 16, and find solace in his belief that the only "targets of

his conduct" were "large[] recording companies," but his financial gain[10] of access to free music

and his enabling others such access[11] creates a great public harm that Congress determined must

be deterred.  *See F.W. Woolworth*, 344 U.S. at 233 ("The statutory rule, formulated after long

experience, not merely compels restitution of profit and reparation for injury but also is designed

to discourage wrongful conduct."); *see also In re Charter Communications, Inc.*, 393 F.3d 771,

779 (8th Cir. 2005) (Murphy, J., dissenting) ("It is not just faceless corporations who pay the

cost [of peer-to-peer file-sharing].  Local music retailers are also vulnerable to the allure of free

music, and artists can lose economic incentive to create and distribute works." (internal citation

omitted)).

    Defendant acknowledges that "courts have shown deference under *Williams* to large

awards in recent statutory damage cases," but attempts to distinguish those cases on the ground

that those awards were "upheld against for profit corporations."  Def.'s Mem. at 13; *see also*

---

[10]The Copyright Act defines "financial gain" as an "expectation of receipt, of anything of value, including the receipt of other copyrighted works."  *See* 17 U.S.C. § 101.

[11]Defendant equates his actions with "shoplifting music from a record store."  Def.'s Mem. at 13.  The record, however, shows that Defendant not only downloaded songs without purchasing them, he also distributed those songs to others, *see* Electronic Order (July 31, 2009); *Sony BMG Music Entm't v. Tenenbaum*, ___ F. Supp. 2d ___, 2009 WL 4547019, at *2 (D. Mass. Dec. 7, 2009) (noting Defendant "made more than 800 songs available to other Kazaa users to download)—the equivalent of shoplifting music from a record store and then providing free copies to an unquantifiable number of other individuals.

17

Def.'s Mem. at 12 (arguing the Court should side with the consumer over the commercial corporation). Congress, however, did not make such a distinction in constructing the statutory range to deter the public harm of copyright infringement. *See Capitol Records, Inc.*, 626 F. Supp. 2d at 155 (observing that the "[Copyright Act's statutory] damages provision does not make the slightest reference to this distinction"). As noted above, the public harm done by copyright infringement is not limited to when the infringer is seeking commercial gain. *See F.W. Woolworth*, 344 U.S. at 233 ("Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy (of deterrence).").[12]

Defendant also argues that the commonality of his actions, which he claims are "no different than the conduct of literally millions of others in his generation," suggests that the jury's statutory damages award is unconstitutional. Def.'s Mem. at 11. The commonality of Defendant's actions, however, demonstrates the necessity of providing strong deterrence toward others who think their actions go undetected. Indeed, Congress recognized as much in enacting the 1999 amendment when it observed that "many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright

---

[12]Nor, as Defendant contends, *see* Def.'s Mem. at 12–13, does a bankrupting statutory damages award self-evidently violate the *Williams* standard. The Due Process Clause "does not require Congress to make illegal behavior affordable, particularly for multiple violations." *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 778 (N.D. Ill. 2008) (internal quotation marks and citation omitted); *see also* H.R. Rep. 106-216, at 6 ("It is important that the cost of infringement substantially exceed the costs of compliance, so that persons who use or distribute intellectual property have a strong incentive to abide by the copyright laws."); *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) ("[A] rule of liability which merely takes away the profits from [a copyright violation] would offer little discouragement to infringers. . . . The statutory rule, formulated after long experience, . . . is designed to discourage wrongful conduct.").

18

owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action." H.R. Rep. 106-216, at 3 (1999). And, Defendant exemplifies Congress' concern. *See Sony BMG Music Entertainment*, 2009 WL 4547019, at *16 ("[E]ven after his illegal file sharing came to light, [Defendant] continued to download and share music online for at least three more years. . . . He knew file sharing was illegal, yet persisted.").

The cumulative effect of Defendant's infringements and those of others creates a great public harm. *See Williams*, 251 U.S. at 67 (finding that due process is satisfied if the legislature has given "due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to [the law]."). One study, for example, has estimated that global music piracy causes the loss of (1) $12.5 billion of annual economic output in the United States, (2) 71,060 American jobs, (3) $2.7 billion in annual earnings to American workers, and (4) $422 million in annual U.S. tax revenue.[13] *See* Stephen E. Siwek, The True Cost of Sound Recording Piracy to the U.S. Economy, Institute for Policy Innovation, Policy Report 188, August 2007, *available at* http://www.ipi.org (follow "The True Cost of Sound Recording Piracy to the U.S. Economy" hyperlink under Publications for 2007) (last visited Jan. 15, 2010); *see also Sony BMG Music Entertainment*, 2009 WL 4547019, at *3 ("There can be no question that . . . continuous, high-volume file sharing—offering exact duplicates to millions of peer-to-peer users for free—would negatively affect the market for these copyright works.").

---

[13]Despite this great public harm, Defendant notes that many view his actions as "not morally wrong." Def.'s Mem. at 16. Defendant's statement merely demonstrate the validity of Congress' concerns in enacting the 1999 amendment to the Copyright Act. *See* H.R. Rep. 106-216, at 3 (1999).

Indeed, Defendant acknowledges that when "his conduct is combined with millions of others . . . the damage to the [Plaintiffs appear[s] to be substantial." Def.'s Mem. at 11. Defendant nevertheless argues that the cumulative effect of infringement cannot be considered in awarding statutory damages. Def.'s Mem. at 11–12 (citing *Philip Morris USA v. Williams*, 549 U.S. 349, 353–54 (2007). Defendant, however, once again relies on punitive damages jurisprudence that is not applicable here. The Supreme Court has explicitly recognized that Congress "may adjust [the] amount (of statutory damages) to the public wrong rather than the private injury." *Williams*, 251 U.S. at 66; *see also* Jury Instructions, at 3 (July 31, 2009) (instructing the jury that in determining the amount of statutory damages to award, they may consider "[t]he need to deter . . . other potential infringers.").[14]

Defendant contends the legislative history of the 1999 amendment to the Copyright Act and a statute that proceeded that amendment—the 1997 No Electronic Theft Act (the "NET Act")—demonstrate that Congress did not intend for statutory damages to be imposed on music consumers. Def.'s Mem. at 19–23. According to Defendant, because the NET Act was passed in response to a criminal case involving "large-scale . . . software piracy" and the 1999 amendment was enacted to promote zealous enforcement of the NET Act,[15] the increase in the

---

[14]Many of the factors Defendant urges the Court to consider in assessing the constitutionality of the jury's statutory damages award were already considered by the jury. *See* Jury Instructions, at 3 (July 31, 2009) (listing the factors the jury could consider in determining a just award, including the nature of the infringement, the defendant's purpose and intent, the profit the defendant reaped, and the revenue lost by plaintiff). Defendant asks the Court to reduce the jury's award to the statutory minimum, but does not explain why the Court's assessment of these factors would be any more informed than the jury's.

[15]The NET Act and the 1999 amendment are not related in the way that Defendant suggests. The NET Act established a new criminal copyright standard, *see* Pub. L. No. 105-147 (1997), whereas statutory damages (the relevant subject of the 1999 amendment) are applied

statutory damages range contained in the 1999 amendment does not apply to "individual[,] end-using [music] consumers."  Def.'s Mem. at 20.  Defendant's argument, however, is inconsistent with the text of the 1999 amendment and rests on a selective reading of the legislative history.

The text of the 1999 amendment to the Copyright Act does not distinguish between the infringement of software and the infringement of other copyrighted works by, for example, imposing higher statutory damages for the former and lower statutory damages for the latter. The statute, instead, applies the same statutory damages range to all "infringer[s] of copyright." *See* 17 U.S.C. § 504(a).  Further, the 1999 amendment does not impose different ranges of statutory damages depending on the subjective classification of whether the infringement is "large-scale" or "small-scale."  Rather, the applicable range is applied to each infringed work. *See* 17 U.S.C. § 504(c)(1).  To the extent the legislative history cited by Defendant suggests otherwise, which it does not, the text of the statute controls.  *See Lin v. Mukasey*, 521 F.3d 22, 28 n.3 (1st Cir. 2008) ("To the extent [the Senator's] remarks conflict with the plain language of the statute, we cannot elevate legislative history over the statute as enacted."); *Lapine v. Town of Wellesley*, 304 F.3d 90, 96 (1st Cir. 2002) ("If statutory language is plain, permitting only one construction, there is no occasion to seek out congressional intent by reference to legislative history or other extrinsic aids.").

Even if the Court were to look beyond the language of the 1999 amendment to the legislative history of that amendment and the NET Act, Defendant's argument that Congress did not intend for the increased statutory damages range to apply to music consumers would fail.

---

only in civil cases.

21

Defendant's argument relies solely on the statements of individual Congressmen made during committee hearings and floor debates. *See* Def.'s Mem. at 20–22. These statements, which are ambiguous with respect to even the individual Congressman's intent, divulge nothing about the intent of Congress as a whole. *See City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 642 n.1 (1973) (Rehnquist, J., dissenting) ("Statements or comments of individual Senators or Representatives on the floor of either House are not to be given great, let alone controlling, weight in ascertaining the intent of Congress as a whole. This guidance is particularly appropriate in this case, as the statements of two individual Congressmen quoted in the Court's opinion are at odds with the views expressed in the committee reports." (citations omitted)); *McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493–94 (1931); *Lapina v. Williams*, 232 U.S. 78, 90 (1914).

Indeed, far from demonstrating a limited intent on the part of Congress to address only the large-scale infringement of software, the committee reports for both the NET Act and the 1999 amendment to the Copyright Act show that Congress was concerned with the infringement of all copyrighted works—infringement which it believed would become even more widespread as technology continued to develop. H.R. Rep. 106-216, at 3 (1999) ("Unfortunately, the potential for this problem to worsen is great. By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works."); H.R. Rep. 105-339, at 4 (1997) (same). Notably, in enacting the NET Act, Congress explicitly recognized the potential for MP-3 technology to be used for infringing purposes: "The extension of an audio-compression technique, commonly referred to as MP-3, now permits infringers to transmit large volumes of

22

CD-quality music over the Internet."[16]  H.R. Rep. 105-339, at 4 (1997); *see also* H.R. Rep.
106-216, at 3 (1999) (noting digital video disks enable individuals to "produce perfect
secondhand copies"); H.R. Rep. 105-339, at 4 (1997) (same).  Therefore, contrary to Defendant's
assertion, the increased range of statutory damages contained in the 1999 amendment to the
Copyright Act does apply to Defendant's actions.

Copyrights are of great value, not just to their owners, but to the American public as well.
Congress has recognized this value from the first days of the Republic.  The federal copyright
statute, enacted by the First Congress and subject to numerous revisions since that time, has
consistently authorized the awarding of statutory damages to ensure significant monetary awards
in copyright infringement lawsuits that will make copyright owners whole and deter further
infringement.  This historical approach is followed in the current version of the Copyright Act's
statutory damages provision; it provides compensation to copyright owners who have to invest
resources into protecting property that is often unquantifiable in value and deters those infringing

---

[16]Defendant maintains that the 1999 amendment does not apply to individuals sharing
music though peer-to-peer networks because "Napster was not released until June 1, 1999," one
month after Congress first proposed an increase in the Copyright Act's statutory damages range
that led to the 1999 amendment. Def.'s Mem. at 21.  This argument, however, is not persuasive.
The 1999 amendment was not enacted until December 9, 1999, after Napster was released.  *See*
Pub. L. No. 106-160; *see also Sony BMG Music Entertainment*, 2009 WL 4547019, at *15
(noting "peer-to-peer networks first became widespread in 1999").  Moreover, MP-3 technology,
which made file-sharing possible, was patented in the United States in 1996, well before
Congress enacted the 1999 amendment.  *See* Shane Nix, *Lifting the Supreme Court's Thumb Off
the Scale: Promoting Technological and Entrepreneurial Innovation, While Protecting the
Interests of Copyright Holders After* MGM v. Grokster, 16 DePaul-LCA J. Art & Entm't L. 49,
51–52 (2005).  Finally, in enacting the Copyright Act, Congress explicitly stated that it intended
copyright protection to extend to future technological developments.  *See* 17 U.S.C. § 102(a)
("Copyright protection subsists, in accordance with this title, in original works of authorship
fixed in any tangible medium of expression, *now known or later developed*, from which they can
be perceived, reproduced, or otherwise communicated, either directly or with the aid of a
machine or device." (emphasis added)).

parties who think they will go undetected in committing this serious public wrong. Congress'
expressed desire to increase deterrence, accompanied by congressional findings, demonstrates
that Congress gave due regard to the public harm, opportunities to commit multiple violations,
and the need to ensure compliance with the law in establishing its statutory range.[17] The Court
should defer to Congress' reasoned judgment. The proper place for any policy debate of what
should be the level of deterrence resides in the halls of Congress.

## CONCLUSION

The United States respectfully requests that the Court first determine whether
Defendant's motion can be resolved without reaching the constitutional question presented. If,
however, the Court finds it necessary to address the constitutionality of the application of 17
U.S.C. § 504(c) in this case, it should find that it satisfies the Due Process Clause.

---

[17] This issue is not just confined to the United States but is evident in the United States'
international agreements that require countries to have in place statutory damages to protect
copyrights. *See, e.g.*, Singapore-US Free Trade Agreement, Art. 16.9.9; Morocco-US Free Trade
Agreement, Art. 15.11.7; Central America-US Free Trade Agreement, Art. 15.11.8.

Respectfully submitted this 19th day of January, 2010.

TONY WEST
Assistant Attorney General

CARMEN ORTIZ
United States Attorney

JOHN R. GRIFFITHS
Assistant Director, Federal Programs Branch


By:    /s/ Michelle R. Bennett_____
MICHELLE R. BENNETT, CO Bar No. 37050
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7111
Washington, D.C. 20001
Tel: (202) 305-8902
Fax: (202) 616-8470
Email: michelle.bennett@usdoj.gov

*Counsel for the United States of America*


## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2010, I filed a true copy of the above document with the CM/ECF System, which will send an electronic notice to the attorney of record for each party.

_/s/ Michelle R. Bennett_____
MICHELLE R. BENNETT