UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SONY BMG MUSIC ENTERTAINMENT, *et al.* | ) ) ) ) | |
| Plaintiffs, | ) ) | Civ. Act. No. 1:07-cv-11446-NG |
| v. | ) ) ) | (ORIGINAL DOCKET NUMBER)(Leave to File Granted 2/18/2010) |
| JOEL TENENBAUM | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL OR REMITTITUR**

Charles R. Nesson*
BBO #369320
1575 Massachusetts Avenue
Cambridge, Massachusetts 02138
(617) 495-4609
nesson@gmail.com
*With assistance of Jason Harrow.

Matthew H. Feinberg
BBO #161308
Matthew A. Kamholtz
BBO #257290
FEINBERG & KAMHOLTZ
125 Summer St.
Boston, Massachusetts 02110

*Attorneys for Defendant Joel Tenenbaum*

February 18, 2010

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I. The REMEDIAL PROVISIONS OF THE COPYRIGHT ACT HAVE BEEN UNCONSTITUTIONALLY APPLIED TO THE DEFENDANT. ..................................... 1

    A. Tenenbaum Caused Actual Damages of No More Than $21.00. ....................... 1

    B. Actual Harm Must Be Considered in Judging the Excessiveness of a Damage Award. .................................................................................................................. 2

    C. The Damage Award Must Relate to the Thirty Songs on Which The Court Directed Verdicts. ................................................................................................. 3

    D. The Analytical Framework Articulated In *BMW v. Gore* and *State Farm v. Campbell* Applies In This Case. ............................................................................ 4

    E. Under Any Standard, An Award of $675,000 is Grossly Excessive. ................... 8

II. EITHER OF TWO ERRORS REQUIRE REDUCTION OF THE AWARD AT THE LEAST TO THE STATUTORY MINIMUM. .................................................................. 9

    A. The Court's Instruction on Damages Was Improper And Prejudicial In This Case. ....................................................................................................................... 9

    B. The Court's Exclusion of the Defendant's Settlement Offer Was Prejudicial Error. ..................................................................................................................... 10

III. EVEN THE STATUTORY MINIMUM OF $750 PER INFRINGEMENT FOR THE THIRTY INFRINGEMENTS WOULD BE GROSSLY EXCESSIVE AND UNCONSTITUTIONAL. ................................................................................................ 11

IV. THE COURT'S DENIAL TO THE DEFENDANT OF HIS DEFENSE OF FAIR USE WAS ERROR. ........................................................................................................ 12

V. 17 U.S.C. 504(c) SHOULD BE INTERPRETED SO AS NOT TO APPLY TO INFRINGERS WHO CAUSE NO MORE THAN NOMINAL DAMAGE. ................... 12

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Atlantic Recording Corp. v. Brennan*, 534 F. Supp. 2d 278 (D. Conn. 2008) .................... 6

*Bly v. Banbury Books, Inc.*, 638 F. Supp. 983 (E.D. Pa. 1986) .......................................... 2

*BMW of N. America v. Gore*, 517 U.S. 559 (1996) ..................................................... *passim*

*Brady v. Daly*, 175 U.S. 148 (1899) ..................................................................................... 3

*Capitol Records Inc. v. Thomas-Rassett*, 2010 WL 291763 (D. Minn. 2010) ................ 2, 8

*Davis v. E. I. Du Pont de Nemours & Co.*, 249 F.Supp. 329 (D.C.N.Y. 1966) .................. 3

*Douglas* v. *Cunningham*, 294 U.S. 207 (1935) ................................................................. 13

*Feltner v. Columbia Pictures*, 523 U.S. 340 (1998) ......................................................... 10

*Fitzgerald Publishing v. Baylor*, 670 F. Supp. 1133 (E.D.N.Y. 1987) ............................... 2

*Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995) ................... 7

*Hypertherm, Inc. v. American Torch Tip Co.*, 2009 U.S. DIST. LEXIS 17821
    (D.N.H. 2009) ................................................................................................................ 10

*In re Napster,* 2005 WL 1287611 (N.D. Cal. 2005) ....................................................... 6, 7

*Innovative Engineering & Consulting Corp. v. Hurley*, 2006 U.S Dist. LEXIS 70502
    (N.D. Ohio 2006) .......................................................................................................... 10

*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455 (D. Md. 2004) ............... 8

*New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293 (S.D.N.Y. 2001) ..... 2

*Parker v. Time Warner,* 331 F.3d 13 (2d Cir. 2003) ..................................................... 5, 6

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007) ........................................................ 4

*Pierce v. F.R. Tripler & Co.*, 955 F.2d 820 (2d Cir. 1992) .............................................. 10

*Romano v. U-Haul Int'l*, 233 F.3d 655 (1st Cir. 2000) ....................................................... 5

*RSO Records, Inc. v. Peri*, 596 F. Supp. 849 (S.D.N.Y. 1984) ......................................... 2

*Salinger v. Random House, Inc.*, 811 F.2d 90 (2d Cir. 1987) .......................................... 12

*St. Louis, I. M. & S. Railway Co. v. Williams*, 251 U.S. 63 (1919) ........................... 2, 4, 7

*Starr v. Sony BMG Music Entm't*, 2010 WL 99346 (2d Cir. 2010) ................................... 1

*State Farm v. Campbell*, 538 U.S. 408 (2003) ............................................................ 4, 5, 6

*UMG Recordings v. Lindor*, 2006 WL 3335048 (E.D.N.Y. 2006) ......................... 6, 7, 11

*Venegas-Hernandez v. Peer*, 2004 WL 3686337 (D.P.R. 2004), *partially vacated on
    other grounds*, 424 F.3d 50 (1st Cir. 2005) .................................................................... 2

*Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F.Supp. 740 (S.D.N.Y. 1988) .............. 2

*Yurman Studio v. Casteneda*, 2008 U.S. Dist. LEXIS 99849 (S.D.N.Y. 2008) ................. 2

*Zomba Enters., Inc. v. Panorama Records*, 491 F.3d 584 (6th Cir. 2007) .......................... 8

### Statutes and Federal Rules

17 USC § 504 (2006) ....................................................................................... *passim*

42 U.S.C. § 1981a (2006) .................................................................................... 5, 7

47 U.S.C. § 521 *et seq*. (2006) ................................................................................ 5

Fed. R. Evid. 408 ................................................................................................. 10

### Other Authorities

Adrian Vermeule, *Saving Constructions*, 85 Geo. L.J. 1945 (1997) ................................ 13

Blaine Evanson, *Due Process in Statutory Damages*, 3 Geo. J.L. & Pub. Pol'y 601 (2005) ................................................................................................................. 7

Dan Sabbagh, Average Teenager's iPod Has 800 Illegal Music Tracks, *Times Online*, June 16, 2008, http://technology.timesonline.co.uk/tol/news/tech_and_web/personal_tech/article4144585.ece .............................................. 9

J. Cam Barker, *Grossly Excessive Penalties in the Battle Against Illegal File-Sharing: The Troubling Effects of Aggregating Minimum Statutory Damages for Copyright Infringement*, 83 Tex. L. Rev. 525 (2004) ........................................ 6

Jessica Litman, *Lawful Personal Use*, 85 Tex. L. Rev. 1871, 1882 (2007) ...................... 14

Pamela Samuelson & Tara Wheatland, *Statutory Damages in Copyright Law: A Remedy in Need of Reform*, 51 Wm. & Mary L. Rev. 439 (2009) ................................ 6

Recording Industry Association of America, 2006 Consumer Profile, *available at* http://www.scribd.com/doc/311010/RIAA-Recording-Industry-Association-of-America-27 ......................................................................................................... 9

## I. THE REMEDIAL PROVISIONS OF THE COPYRIGHT ACT HAVE BEEN UNCONSTITUTIONALLY APPLIED TO THE DEFENDANT.

### A. Tenenbaum Caused Actual Damages of No More Than $21.00.

Contrary to Plaintiffs' assertion that Joel Tenenbaum caused them "billions of dollars" of damages in lost revenue, Pl. Opp. at 28, with respect to the thirty songs which are the subject of this action, Tenenbaum actually caused damages to the plaintiffs of, at most, $21.00. Had he purchased the thirty songs on iTunes he would have paid 99 cents apiece, of which Apple would have passed on 70 cents to the record companies.[1] Assuming, contrary to fact, that the record companies have zero costs so that every cent returned to them is profit, the total return would have been $21.00.

But, the plaintiffs say, by including these songs in his share folder, Tenenbaum distributed them to millions of people, causing the record companies "incalculable" damages. This is completely false hyperbole. Not a single person who downloaded these songs using Kazaa would have been impeded from obtaining them had Tenenbaum blocked access to his share folder. Tenenbaum was not a seeder of any of these songs. Whatever damage was caused by the distribution of these thirty immensely popular songs on the peer-to-peer networks was caused by the initial seeders. Once the initial seeds had proliferated, the addition of one more copy to the unlimited, easily-accessible supply could have had no economic consequence whatsoever. Plaintiffs would not have realized a single additional sale had Tenenbaum blocked access to his share folder. It makes absolutely no difference to a downloader using Kazaa from which of the thousands of available share folders her download comes. As long as one copy (made by the original seeder) is available, no one needed to download from Tenenbaum. Thus, the Industry's claim that Tenenbaum's placing these songs in his share folder somehow proximately caused the supposed "billions of dollars of lost revenues and the mass layoffs in the record industry," Pl. Opp. at 28, is nonsense.

---

[1] *Starr v. Sony BMG Music Entm't*, __ F.3d __, 2010 WL 99346 (2d Cir. 2010) (holding that the defendant record labels must face antitrust price-fixing claims for setting the wholesale price of digital music at 70 cents).

**B. Actual Harm Must Be Considered in Judging the Excessiveness of a Damage Award.**

Plaintiffs have continually maintained that the actual harm caused to them by Tenenbaum is simply "not a factor" in this Court's analysis because of the unique nature of statutory damages. Pl. Opp. at 27; *see also id.* at 20 ("[T]here is no constitutional requirement that the level of a statutory damage award bear some close relation to the actual harm caused."). This proposition is as incorrect in 2010 as it has been since even before *St. Louis, I. M. & S. Railway Co. v. Williams*, 251 U.S. 63, was decided in 1919. As Chief Judge Davis stated in *Capitol Records Inc. v. Thomas-Rassett*, "because statutory damages have, in part, a compensatory purpose, 'assessed statutory damages should bear some relation to the actual damages suffered.'" __ F. Supp. 2d __, 2010 WL 291763 at *4 (D. Minn. 2010) (quoting *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 987 (E.D. Pa. 1986) ("[N]umerous courts have held that assessed statutory damages should bear some relation to the actual damages suffered.")). *See also Venegas-Hernandez v. Peer*, 2004 WL 3686337, *30 (D.P.R. 2004), *partially vacated on other grounds*, 424 F.3d 50 (1st Cir. 2005) ("When determining the exact amount of statutory damages to award to a copyright plaintiff, the court has discretion to award an amount that 'the court deems just;' however, statutory damages should be commensurate with the plaintiff's actual damages.") (citing *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 303 (S.D.N.Y. 2001); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 862 (S.D.N.Y. 1984) (holding that "assessed statutory damages should bear some relation to actual damages suffered"); *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F.Supp. 740, 769 (S.D.N.Y. 1988) (stating that "this option is not intended to provide the plaintiff with a windfall recovery")); *Yurman Studio v. Casteneda*, 2008 U.S. Dist. LEXIS 99849, *4-*5 (S.D.N.Y. 2008) ("A district court has 'wide discretion' to grant an appropriate award within the statutory range. Numerous factors may be consulted, including 'the expenses saved and profits reaped by the defendants, the revenues lost by the plaintiffs, the value of the copyright, the deterrent effect of the award on other potential infringers, and factors relating to individual culpability.' At the end of the day, 'statutory damages should bear some relation to actual damages suffered.'); *Fitzgerald Publishing v. Baylor*, 670 F. Supp. 1133, 1140 (E.D.N.Y. 1987) ("Undoubtedly these damages should bear some relation to the actual damages suffered; however, since statutory damages are often

2

used in cases where actual damages are difficult to prove, they cannot correspond exactly with actual damages."); *Davis v. E. I. Du Pont de Nemours & Co.*, 249 F.Supp. 329, 341 (D.C.N.Y. 1966) ("[T]he [copyright] cases neither minimize the compensatory statutory purpose nor indicate that deterrence should be carried to an extreme."); *Brady v. Daly*, 175 U.S. 148, 154 (1899) ("It is evident that in many cases it would be quite difficult to prove the exact amount of damages which the proprietor of a copyrighted dramatic composition suffered . . . and yet it is also evident that the statute seeks to provide a remedy for such a wrong, and to grant to the proprietor the right to recover the damages which he has sustained therefrom.")

### C. The Damage Award Must Relate to the Thirty Songs on Which The Court Directed Verdicts.

The plaintiffs continually rely on Tenenbaum's supposed "downloading and distribution of thousands of additional works to millions of other P2P users" to justify the large damage award. *E.g.*, Pl. Opp. at 3. But they did not prove these other alleged infringements at trial. Moreover, such imprecise speculation about other infringements is clearly precluded by the terms of the Copyright Act itself when damages are assessed. Section 504(c)(1) allows plaintiffs to recover "an award of statutory damages for all infringements *involved in the action*." 17 § USC 504(c)(2) (emphasis added). Plaintiffs themselves admit, as they must, that they "sought statutory damages only for the thirty works at issue." Pl. Opp. at 28. Accordingly, Plaintiffs' repeated references to the "thousands of works" that Tenenbaum supposedly infringed – with no proof of an exact number, who owned the copyrights, whether they were registered, and whether and when they were shared – should be ignored in the face of the lack of proof and the clarity of the statutory text.

Plaintiffs claim that it is "permissible" for the jury and this Court to take into account injuries not only to the plaintiff record companies but also to "artists and producers," since these third-parties are "directly 'downstream' from the Plaintiffs and cannot prosecute their own rights." *Id.* at 27. Here, Plaintiffs are not making an argument about the harm Tenenbaum caused; instead, they are railing against the whole phenomenon of peer-to-peer file sharing. Worse, Plaintiffs make this statement only three sentences after conceding that "a jury cannot be told to punish a defendant directly for

3

tortious conduct affecting third parties not before the court." *Id.* (citing *Philip Morris USA v. Williams*, 549 U.S. 346 (2007)). If a defendant cannot be punished for his own tortious conduct affecting third parties not before the court, then, surely, he cannot be punished for the conduct of others.

### D. The Analytical Framework Articulated In *BMW v. Gore* and *State Farm v. Campbell* Applies In This Case.

The recording industry recognizes only two distinct, unrelated types of awards: "statutory damages" and "punitive damages." It then argues that *BMW of N. America v. Gore*, 517 U.S. 559 (1996) applies only to punitive damages. *See generally* Pl. Opp. at 19-22. But, as articulated by the Supreme Court, the First Circuit, and the federal courts of other circuits, the two kinds of awards are related and overlapping. Indeed, the First Circuit itself has explicitly applied the *BMW* framework to statutory damage awards.

First, the Supreme Court's decisions in *BMW* and *State Farm v. Campbell*, 538 U.S. 408 (2003), demonstrate that the Plaintiffs theory of complete separation must be wrong. In *BMW*, the Court treated statutory damages as essentially synonymous with punitive damages. The Court unmistakably considered that both kinds of awards should be subject to due process review, as they are part of the same body of jurisprudence. The Court explicitly relied on *Williams* for the principle that a non-compensatory award may not be wholly "disproportioned to the offense." 517 U.S. at 575. In discussing multiples of punitive over compensatory damages, the Court analyzed 700 years worth of statutory damage provisions:

> Scholars have identified a number of early English statutes authorizing the award of multiple damages for particular wrongs. Some 65 different enactments during the period between 1275 and 1753 provided for double, treble, or quadruple damages.

517 U.S. at 580-81. The Court continued:

> One English statute, for example, provides that officers arresting persons out of their jurisdiction shall pay double damages. 3 Edw., I., ch. 35. Another directs that in an action for forcible entry or detainer, the plaintiff shall recover treble damages. 8 Hen. VI, ch. 9, § 6.

517 U.S. at 581 n.33.

4

In its subsequent decision in *State Farm*, the Court demonstrated its recognition that *BMW*'s very underpinning is the jurisprudence of *statutory* damages:

> Our jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. In *Haslip*, in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. 499 U.S., at 23-24. We cited that 4-to-1 ratio again in *Gore*. 517 U.S., at 581. *The [Gore] Court further referenced a long legislative history, dating back over 700 years and going forward to today, providing for [statutory] sanctions of double, treble, or quadruple damages to deter and punish. Id.*, at 581, and n.33. While these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, *id.*, at 582, or, in this case, of 145 to 1.

538 U.S. at 425 (emphasis added).

*First Circuit Cases*. In *Romano v. U-Haul Int'l*, 233 F.3d 655 (1st Cir. 2000), an employment discrimination case, the plaintiff won an award of statutory damages under 42 U.S.C. § 1981a. Not only did the Court view *BMW v. Gore* as applicable, but it explicitly "subject[ed] the $285,000 award to the *BMW* three-guidepost analysis," concluding that:

> In this case, the ratio between punitive and compensatory damages was 19 to 1. Given the low actual damages due to appellee's short period of employment and the difficulty in measuring actual damages in a case involving "primarily personal" injury, we hold that this is a constitutionally acceptable ratio between punitive and compensatory damages.

233 F.3d at 673.

*Second Circuit Cases*. In *Parker v. Time Warner,* 331 F.3d 13 (2d Cir. 2003), a case involving statutory damages under the Cable Communications Policy Act of 1984, 47 U.S.C. § 521 *et seq.*, it was held that the interplay between two statutes in that case

> [M]ay expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages . . . [S]uch a distortion could create a potentially enormous aggregate recovery for plaintiffs, and thus an *in terrorem* effect on defendants, which may induce unfair settlements. And it may be that in a

5

> sufficiently serious case the due process clause might be invoked . . . to
> nullify that effect and reduce the aggregate damage award. Cf. *State Farm*,
> 538 U.S. 408[, 409] (2003) ("The Due Process Clause of the Fourteenth
> Amendment prohibits the imposition of grossly excessive or arbitrary
> punishments on a tortfeasor."); *BMW of North America, Inc. v. Gore*, 517
> U.S. 559, 580 (1996) (noting that the "most commonly cited indicium of
> an unreasonable or excessive punitive damages award is its ratio to the
> actual harm inflicted on the plaintiff.").

331 F.3d at 22.

In *UMG Recordings v. Lindor,* 2006 WL 3335048 (E.D.N.Y. 2006), a case very like the present case that was brought by more or less the same group of recording companies against an individual accused of having infringed their sound recording copyrights using Kazaa, the defendant sought leave to amend her answer to assert as an affirmative defense the unconstitutionality of plaintiffs' claim for statutory damages. She wanted to argue, on due process grounds, that the minimum statutory damages of $750 were excessive. These same plaintiffs opposed the amendment on the ground that it was "futile." The court granted defendants' motion and allowed her to assert the defense:

> [P]laintiffs can cite to no case foreclosing the applicability of the due
> process clause to the aggregation of minimum statutory damages
> proscribed under the Copyright Act. On the other hand, Lindor cites to
> case law and to law review articles suggesting that, in a proper case, a
> court may extend its current due process jurisprudence prohibiting grossly
> excessive punitive jury awards to prohibit the award of statutory damages
> mandated under the Copyright Act if they are grossly in excess of the
> actual damages suffered.

2006 WL 3335048 at *3. The cases to which the Court alludes in *Lindor* are *Parker v. Time Warner*, *supra*, and *In re Napster,* 2005 WL 1287611 (N.D. Cal. 2005), *infra*.[2]

In *Atlantic Recording Corp. v. Brennan*, 534 F. Supp. 2d 278 (D. Conn. 2008), another RIAA case against a downloader, the court denied the plaintiffs' motion for

---

[2] The two law review articles referred to are J. Cam Barker, *Grossly Excessive Penalties in the Battle Against Illegal File-Sharing: The Troubling Effects of Aggregating Minimum Statutory Damages for Copyright Infringement*, 83 Tex. L. Rev. 525 (2004), and Blaine Evanson, *Due Process in Statutory Damages*, 3 Geo. J.L. & Pub. Pol'y 601 (2005). *See also* Pamela Samuelson & Tara Wheatland, *Statutory Damages in Copyright Law: A Remedy in Need of Reform*, 51 Wm. & Mary L. Rev. 439 (2009).

default judgment, holding that

> The defenses which have possible merit include . . . whether the amount of statutory damages available under the Copyright Act, measured against the actual money damages suffered, is unconstitutionally excessive, see *Lindor*, *3 (finding the defense non-frivolous); *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 588 (6th Cir. 2007) (rejecting the defense as to a 44:1 damages ratio); *see generally* Blaine Evanson, *Due Process in Statutory Damages*, 3 Geo. J.L. & Pub. Pol'y 601, 637 (2005).

534 F. Supp. 2d at 282.

<u>Seventh Circuit Cases</u>. In *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995), a case under § 1981a, the jury's initial award of $300,000 in non-compensatory statutory damages was reduced to $100,000 by the trial judge to comport with the statutory cap. The Seventh Circuit then vacated this award and remanded for the trial judge to impose a lower award. In doing so, the Court referenced *BMW v. Gore*, which, at that time, had been argued but not yet decided by the Supreme Court. 69 F.3d at 1355. The Court opined that the maximum award "should be reserved for egregious cases." *Id.*

Plaintiffs assertion that they "have not located a single case, in the nine decades since *Williams* was decided, in which a court relied on *Williams* to reduce or eliminate an award of statutory damages because of a due process violation" is thus off the mark. First, it is irrelevant because, before the Recording Industry's unprecedented assault on peer-to-peer end-using consumers, non-commercial individuals who acted for personal benefit, made no profit, and caused no significant actual damage had never been sued for statutory damages. Second, Plaintiffs' assertion asks and answers the wrong question. The proper question is not whether any court has directly applied *Williams* to reduce an award, but whether any court has ever reduced a statutory damage award that was within the statutory maximum. The answer to that question is yes. *Hennessy v. Penril Datacomm Networks* is such a case.

<u>Ninth Circuit Cases</u>. In *In re Napster*, 2005 WL 1287611, *10 (N.D. Cal. 2005), the court stated that:

> Large awards of statutory damages can raise due process concerns. *Extending the reasoning of Gore and its progeny*, a number of courts have

7

> recognized that an award of statutory damages may violate due process if the amount of the award is "out of all reasonable proportion" to the actual harm caused by a defendant's conduct . . . [T]hese cases are doubtlessly correct to note that a punitive and grossly excessive statutory damages award violates the Due Process Clause . . .

(Emphasis added.)

### E. Under Any Standard, An Award of $675,000 is Grossly Excessive.

In their opposition, Plaintiffs consistently urge this Court to hold that an award of $22,500 *per work* is not excessive. *E.g.*, Pl. Opp. at 30. However, they never once attempt to defend a total award of $675,000; indeed, they never mention this number in their opposition. This is not merely the deployment of lawyerly linguistics in an attempt cover up such an obviously excessive award; it is actually a distortion of the law. Even in cases on which the plaintiffs rely, it was the *aggregate* damage award that was analyzed to determine whether it passed constitutional muster. *See Zomba Enters., Inc. v. Panorama Records*, 491 F.3d 584, 588 n.11 (6th Cir. 2007) (referring to the "statutory-damage award" as the aggregate amount of $806,000); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 457 (D. Md. 2004) (examining whether the "$19 million dollar verdict" should stand). Indeed, in *Capitol Records v. Thomas-Rassett*, the instant case's closest analogue, Chief Judge Davis viewed the damage award in the aggregate when he correctly noted that "these facts simply cannot justify *a $2 million verdict* in this case." __ F. Supp. 2d __, 2010 WL 291763, *6 (D. Minn. 2010) (emphasis added).

The aggregate amount is the only appropriate way to analyze the damage award lest this Court give free reign to the record industry to elicit virtually any amount of money from any of millions of noncommercial infringers who have downloaded songs on the peer-to-peer networks. This is so because, as the plaintiffs take great pains to stress, many users have downloaded thousands of songs, for which the vast majority of copyrights are held by Plaintiffs. Thus, a ruling that damages of $22,500 *per song* are constitutional without any reference to the fairness of the aggregate amount would give the recording industry license to extract arbitrarily high damages simply based on the number of songs they choose to allege have been infringed. In 2008, one study reported that the average British teenager had 800 illegal tracks on his iPod. Dan Sabbagh, Average Teenager's iPod Has 800 Illegal Music Tracks, *Times Online*, June 16, 2008,

http://technology.timesonline.co.uk/tol/news/tech_and_web/personal_tech/article4144585.ece. If $22,500 per infringement were constitutional, this would mean the average teenager is exposed to an $18 *million* dollar verdict against him,[3] clearly an absurd, arbitrary, and unconstitutional result.

The $675,000 award against Defendant Tenenbaum is grossly excessive. The award is more than 32,000 times larger than the damage the defendant caused by downloading and sharing the thirty songs here in issue. This ratio makes the award excessive by any measure. No case cited by the plaintiffs comes anywhere close to approving an award so utterly disproportioned to the damage the defendant caused. Considering that the defendant is a non-commercial individual who acted neither to injure nor profit, but only for personal entertainment, and that the award takes no account of the defendant's capacity to pay, it is monstrous and shocking. *Cf. Thomas-Rasset*, 2010 WL 291763 at *1 ($1.92 award on similar facts was "monstrous and shocking").

## II. EITHER OF TWO ERRORS REQUIRE REDUCTION OF THE AWARD AT THE LEAST TO THE STATUTORY MINIMUM.

### A. The Court's Instruction on Damages Was Improper And Prejudicial In This Case.

The Court, over the defendant's objection, twice instructed that if the jury found willfulness it was to return damage awards for each infringement between $750 and $150,000. (102, 103). The plaintiffs point out that the jury's award was 15% of what the Court instructed was permissible, Pl. Opp. at 3, as if to suggest that $675,000 was a moderate award – but this serves only to emphasize that the Court actually told the jury that it could return a total award of $4.5 million dollars! The Court's instruction was tantamount to affirmatively telling the jury it could return a grossly excessive award in violation of the due process clause of the United States Constitution. In a case such as

---

[3] For additional absurdity, imagine further that the Industry actually got judgments of $18 million in damages from roughly 30,000 teenagers, which is approximately the number of lawsuits they filed against consumers until the end of 2008. That would mean they had outstanding judgments for $540 *billion* dollars – or more than the total revenue the recording industry can expect to earn in about 50 years at its current size of $11 billion per year. *See* Recording Industry Association of America, 2006 Consumer Profile, *available at* http://www.scribd.com/doc/311010/RIAA-Recording-Industry-Association-of-America-27.

this, against a noncommercial individual for infringements resulting in no profit to the defendant and only nominal damage to the plaintiffs, this was clearly improper and tremendously prejudicial. Regardless of whether the instruction might be appropriate in some other case with different facts, it cannot be defended here. The Supreme Court's statement in *Feltner v. Columbia Pictures*, 523 U.S. 340, 355 (1998), that the jury should decide "all issues pertinent to an award of statutory damages under § 504(c)" does not mean that the jury may be told it has the power to award an unconstitutionally large amount. It is the judge's role to see that the jury is allowed to make its award only within constitutional bounds.

### B. The Court's Exclusion of the Defendant's Settlement Offer Was Prejudicial Error.

The plaintiffs seek to mislead the court on the law with respect to Federal Rule of Evidence 408. Plaintiffs ignore the clear and repeated statements of purpose in the Advisory Committee Notes to Rule 408 showing its intent to eliminate only evidence of "admissions" ("evidence of an offer to compromise a claim is not receivable in evidence as an *admission*") and legislative history ("evidence of settlement or attempted settlement of a disputed claim inadmissible when offered as an *admission*," Notes of Committee on the Judiciary, Senate Report No. 93-1277); ("evidence of *admissions* . . . not admissible," Notes of Conference Committee, House Report No. 93-1597). Instead, Plaintiffs cite a "Not for Publication" pre-trial memorandum in which a trial judge, after making the comment quoted by the plaintiffs, Pl. Opp. at 14 (quoting *Hypertherm, Inc. v. American Torch Tip Co.*, 2009 U.S. DIST. LEXIS 17821 (D.N.H. 2009)), actually postponed the question of the admissibility of the challenged evidence until its presentation at trial. *Hypotherm* at *17. ("A final evidentiary ruling . . . cannot be made without the trial context where the evidence offered is considered in light of its purpose and any other evidentiary considerations.") Plaintiffs follow this with a citation to *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 826 (2d Cir. 1992). They fail to note that *Pierce* is an outlier which has been distinguished and limited to its facts by other courts. *See Innovative Engineering & Consulting Corp. v. Hurley*, 2006 U.S Dist. LEXIS 70502, **28-32 (N.D. Ohio 2006) ("Contrary to Plaintiff's bald assertion, the prevailing view appears to be that Rule 408 does *not* bar an offeror from introducing evidence of his own offers," citing treatises and

cases) (emphasis in original). Moreover, as *Innovative Engineering* pointed out in distinguishing *Pierce*, the *Pierce* court's concern was that the offer of settlement there in question had been made by the defendant's lawyer, which meant that admitting it would require disqualifying the lawyer as counsel so that he could serve as a witness. This distinguishes the present case from *Pierce* as well.

Plaintiffs assert that the Court's error in redacting Exhibit 23 and excluding evidence of Defendant Tenenbaum's offer of settlement in November, 2005 was "entirely harmless" because they successfully impeached his character with other evidence. Pl. Opp. at 15. But had Tenenbaum been able to present and argue from the erroneously excluded evidence, he would have been able to explain to the jury that he was prepared in November, 2005 to take responsibility for his actions and that he had made a fair offer backed with a money order – only to have it summarily rejected.

### III. EVEN THE STATUTORY MINIMUM OF $750 PER INFRINGEMENT FOR THE THIRTY INFRINGEMENTS WOULD BE GROSSLY EXCESSIVE AND UNCONSTITUTIONAL.

The enormity of the $675,000 should not be allowed to distort the disproportion of even the minimum statutory award multiplied thirty times over – $22,500 – compared to the actual damage Defendant Tenenbaum caused. For any one infringement, the minimum statutory damage award of $750 would bear a ratio of punitive to actual damage of over 1000 to 1 (using the 70-cent wholesale return to the copyright holder had the songs been purchased on iTunes). *Cf. Lindor*, 2006 WL 3335048 (E.D.N.Y. 2006) (upholding defendant's ability to constitutionally challenge the minimum statutory damage award of $750 against a motion to dismiss for futility). While other factors such as the need for deterrence may be taken into account in assessing the excessiveness of an award, such an exercise quickly spirals out of control when a plaintiff is allowed to aggregate infringements with no recognition of the principle of diminishing return. While deterrence may be warranted for the first infringement, assuming the same need for "deterrence" for each additional infringement is unwarranted and leads to excessiveness, limited only by the plaintiffs' constraint in pleading. Plaintiffs own 80% of all the copyrights for distributed recorded music, which gives them virtually unlimited ability to

11

aggregate infringement claims against those who have downloaded music using peer-to-peer networks.

## IV. THE COURT'S DENIAL TO THE DEFENDANT OF HIS DEFENSE OF FAIR USE WAS ERROR.

Plaintiffs bridle, bellow, and threaten in response to the Court's recognition of the possibility of an "interregnum" and its premise that fairness to consumers might have something to do with fair use. *See generally* Pl. Opp. at 8-12. They vehemently denounce the suggestion that the conduct of copyright holders should be considered in judging the fairness of a consumer's use. They cite cases relating to the copyright holder's rights to exclusive control of unpublished works as if the works in question here were unpublished. Pl. Opp. at 10. They avoid entirely the underlying issue of fairness that led even the then-chairman of the RIAA to say in 2003 that it would be unfair to sue p2p downloaders for statutory damages until the industry offered a digital alternative. They claim that the law should simply ignore the fact that it was precisely the plaintiffs' publication of their songs in digital unencrypted format on CD's that seeded the digital environment with easily-transferable copies of their works and led to the ubiquitous availability of these works on peer- to-peer networks.

It is one thing to say that the law will honor a copyright holder's exclusive control of his unpublished work (i.e., the letters of J.D. Salinger, *see Salinger v. Random House, Inc.*, 811 F.2d 90 (2d Cir. 1987)), but quite another to say that when the copyright holder has published, and continues to publish, its work in a form and into an environment in which massive unauthorized proliferation of copies of the work is entirely predictable, it can look to the law to punish consumers whom the copyright holders confront with an unfair Hobson's choice. None of the cases trumpeted by the plaintiffs deals with such a situation.

## V. 17 U.S.C. 504(c) SHOULD BE INTERPRETED SO AS NOT TO APPLY TO INFRINGERS WHO CAUSE NO MORE THAN NOMINAL DAMAGE.

Finally, the Court should consider whether there is a viable interpretation of Section 504(c) that would avoid all the constitutional difficulties that the statute's application to Defendant Tenenbaum presents. *See, e.g.*, Adrian Vermeule, *Saving*

12

*Constructions*, 85 Geo. L.J. 1945 (1997). Posed more broadly, is there an interpretation of the statute that avoids its unconstitutional application to infringers who make no profit and cause no significant damage? Yes. This Court can simply construe 504(c) to apply only to those infringers covered by 504(b), against whom recovery of actual damage would have been possible but for problems of proof. This would exclude from 504(c) infringers who have caused no more than nominal damage. Numerous considerations bring this interpretation within the realm of possibility.

*First*, statutory damages were developed to meet the problems of proving actual damages, but on the assumption that substantial damage had actually been inflicted. The Supreme Court's opinion in *Douglas* v. *Cunningham*, 294 U.S. 207, 209 (1935), confirms this understanding:

> The phraseology of the section [of the Copyright Act] was adopted . . . to give the owner of a copyright some recompense for injury done him, *in a case where the rules of law render difficult or impossible proof of damages or discovery of profits.*

This understanding underlies the wealth of cases stating that statutory damages must relate to actual damage. This can be true, of course, only for infringers who cause more than nominal actual damage.

*Second*, under the Court's current interpretation, innocent infringers who cause no damage present an unanswerable anomaly. Defendant Tenenbaum is not an innocent infringer, but an interpretation of 504(c) that applies it to persons who have neither profited nor caused significant damage, i.e., persons not covered by 504(b), must contend with the anomaly that statutory damages under 504(c) would be recoverable against entirely innocent persons. Innocent infringers are not aware and have no reason to believe they are infringing. When their actions cause damage to a copyright holder, there is justification for requiring the innocent infringer to pay actual or statutory damages as compensation. But when the innocent infringer has neither profited nor caused damage there is no reason to compensate, and, by hypothesis, deterrence is impossible. A statutory interpretation imposing damages in such a case should be rejected. Congress, in imposing statutory damages on innocent infringers, must have been assuming some reason to *compensate* the copyright holder for actual loss, which means that Congress

must have been assuming some actual profit or damage as a predicate to the imposition of the statutory damage.

*Third*, Congress had no reason to be thinking of lawsuits against end-using consumers because, before the most recent major revision to the remedial section of the Act, there had never had been any such lawsuits. Copyright law historically "aimed its proscriptions at commercial and institutional entities." Jessica Litman, *Lawful Personal Use*, 85 Tex. L. Rev. 1871, 1882 (2007). Even the one paragraph of legislative history of the 1999 Act on which the plaintiffs rely is susceptible of the understanding that Congress had in mind distributors like LaMacchia who cause substantial damage, seeders and bulletin-board operators able to distribute software not otherwise available to the potentially millions of end-using computer users.[4] This does not imply that Congress intended to extend liability to the millions of potential distributees. The expansiveness of the plaintiffs' interpretation requires an assumption that Congress, without any serious discussion, meant to extend statutory damage liability to 200 million home computer-users.

---

[4] "By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works. . . .  Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct." H.R. Rep. No. 106-216 at 3.


15

          Respectfully submitted,

          */s/Charles R. Nesson*
          Charles R. Nesson[*]
          BBO #369320
          1575 Massachusetts Avenue
          Cambridge, Massachusetts 02138
          617 495-4609
          nesson@gmail.com

          Matthew H. Feinberg
          BBO #161380
          Matthew A. Kamholtz
          BBO #257290
          FEINBERG & KAMHOLTZ
          125 Summer St.
          Boston, Massachusetts 02110

          February 18, 2010

---

[*] With assistance from Harvard Law student Jason Harrow.

CERTIFICATE OF SERVICE

      I, Charles R. Nesson, hereby affirm that the within document was this day filed through the ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic filing.

Date: February 18, 2010     */s/ Charles R. Nesson*

                                                    Charles R. Nesson