UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 07-11446-RWZ


SONY BMG MUSIC ENTERTAINMENT, *et al.*

v.

JOEL TENENBAUM

ORDER

August 23, 2012


ZOBEL, D.J.


    This copyright infringement case is before me on remand from the First Circuit.
See Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487 (1st Cir. 2011).  Plaintiffs,

recording companies Sony BMG Music Entertainment, Warner Brothers Records, Inc.,

Atlantic Recording Corporation, Arista Records LLC, and UMG Recordings, Inc.

(collectively, "Sony"), brought this action for statutory damages and injunctive relief

under the Copyright Act, 17 U.S.C. § 101 et seq.  They alleged that defendant, Joel

Tenenbaum, willfully infringed the copyrights of thirty music recordings by using peer-

to-peer file-sharing software to illegally download and distribute such works.  For

brevity, I incorporate the First Circuit's discussion of the factual and procedural history,

id. at 490-96, and summarize only that which is relevant to disposition of the issues on

remand.

**I.      Background**

After a five-day jury trial, District Judge Nancy Gertner partially granted Sony's motion for judgment as a matter of law, holding that plaintiffs owned the thirty copyrights at issue and that Tenenbaum infringed those copyrights through his downloading and distribution activities. The jury found that Tenenbaum's infringement was willful as to each of the thirty copyrighted works, and returned a verdict within the statutory range[1] of $22,500 per infringement, for a total damages award of $675,000.

Tenenbaum moved for a new trial or remittitur, arguing that the court should remit the award to the statutory minimum because its excessiveness both offended due process and merited common law remittitur.  Judge Gertner bypassed the issue of common law remittitur, and reduced the jury award by a factor of ten on the basis that the award was unconstitutionally excessive under the standard for evaluating punitive damage awards enumerated in BMV v. Gore, 517 U.S. 559 (1996).[2]  See Sony BMG Music Entm't v. Tenenbaum, 721 F.Supp.2d 85, 103 (D. Mass. 2010).

The First Circuit affirmed Judge Gertner's findings on liability and the grant of injunctive relief.[3] It also rejected Tenenbaum's arguments "that the Copyright Act is

---

[1] The Copyright Act permits recovery of either actual damages and profits, or statutory damages. 17 U.S.C. § 504(a).  The statute establishes an award range of $750 to $30,000 for each act of non-willful infringement, and a range of $750 to $150,000 for each act of willful infringement. Id. § 504(c).

[2] Gore involved a Fourteenth Amendment due process challenge to a $2 million punitive damages award.  In laying out the standard for finding a punitive damages award unconstitutional, the Supreme Court reasoned that the Constitution requires that a person "received fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."  517 U.S. at 574.  The Court established three "guideposts" for evaluating whether a defendant received adequate notice: (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of the punitive award to the actual or potential harm inflicted on the plaintiff; and (3) the disparity between the punitive award and the civil or criminal penalties authorized in comparable cases. Id. at 574-75.

[3] See Amended Judgment, July 9, 2010 (Docket # 48) (discussing injunctive relief).

unconstitutional under <u>Feltner [v. Columbia Pictures Television, Inc.</u>, 523 U.S. 340

(1998)], that the Act exempts so-called 'consumer copying' infringement from liability

and damages, that statutory damages under the Act are unavailable without a showing

of actual harm, that the jury's instructions were in error, and his various trial error

claims."[4] <u>Tenenbaum</u>, 660 F.3d at 515.   The court of appeals vacated Judge Gertner's

ruling that the damages award violated due process, however, holding that the doctrine

of constitutional avoidance required the district court to consider whether common law

remittitur was appropriate before it considered Tenenbaum's due process challenge.

<u>Id.</u> at 490, 515.   It reinstated the original damages award, and remanded "for

consideration of defendant's motion for common law remittitur based on

excessiveness."  <u>Id.</u> at 515.   Tenenbaum filed a petition for writ of certiorari, which was

denied on May 12, 2012.  <u>Tenenbaum v. Sony BMG Music Entm't</u>, 132 S.Ct. 2431

(2012).

## II.    Discussion

### A.    Common Law Remittitur

Remittitur is appropriate only if the award exceeds "any rational appraisal or

estimate of the damages that could be based on the evidence before the jury," where

such evidence is reviewed in the light most favorable to the prevailing party.  <u>Smith v.

Kmart Corp.</u>, 177 F.3d 19, 30 (1st Cir. 1999) (quoting <u>Milone v. Moceri Family, Inc.</u>, 847

F.2d 35, 36 (1st Cir. 1988)).  <u>See also</u> <u>E. Mountain Platform Tennis, Inc. v. Sherwin-</u>

---

[4] Plaintiff raises many of these same issues on remand.  The First Circuit has already rejected them, <u>see</u> <u>Tenenbaum</u>, 660 F.3d at 496-508, and this court will not address them further.

3

<u>Williams Co., Inc.</u>, 40 F.3d 492, 502 (1st Cir. 1994).  "'[T]he obstacles which stand in the path of' such claims of excessiveness 'are formidable ones.'" <u>Kmart</u>, 177 F.3d at 30 (quoting <u>Wagenmann v. Adams</u>, 829 F.2d 196, 215 (1st Cir. 1987)).  A damage award must stand unless it is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand."  <u>Correa v. Hosp. San Francisco</u>, 69 F.3d 1184, 1197 (1st Cir. 1995) (quoting <u>Segal v. Gilbert Color Sys. Inc.</u>, 746 F.2d 78, 81 (1st Cir. 1984)); <u>Kmart</u>, 177 F.3d at 30.

Under this stringent standard, there is no basis for common law remittitur.  The jury was given a list of non-exhaustive factors to consider in issuing its award, including:

> the nature of the infringement; the defendant's purpose and intent, the profit that the defendant reaped if any, and/or the expense that the defendant saved; the revenue lost by the plaintiff as a result of the infringement; the value of the copyright; the duration of the infringement; the defendant's continuation of infringement after notice or knowledge of copyright claims and the need to deter this defendant and other potential infringers.

<u>Tenenbaum</u>, 660 F.3d at 503-04.  Tenenbaum did not object to these instructions.

In light of these factors, a rational appraisal of the evidence before the jury, viewed in the light most favorable to the verdict, supports the damages award. The jury learned that music recording companies' primary source of revenue stems from their exclusive rights to copy and distribute the musical works of their contracted artists. <u>Id.</u> at 491.  It learned about the operation of peer-to-peer file-sharing networks and how such networks facilitated "the unauthorized and illegal downloading and distribution of copyrighted materials – especially music recordings. . . ." <u>Id.</u> The jury also heard

4

evidence from which it could rationally conclude that the value of a blanket license to upload music recordings to the internet for public consumption would be "enormous." Id. at 491 and n.3 (quoting testimony by a representative from Universal Music Group which suggested the grant of a such a license would result in the record companies losing complete control over their assets and drive them out of business). See also Kmart, 177 F.3d at 30 ("Translating legal damage into money damages is a matter 'peculiarly within a jury's ken'. . . .").

There was further evidence about the scope and scale of Tenenbaum's infringement activities. His illegal conduct lasted for at least eight years, from 1999 to 2007. Id. at 492-93. During that time, he not only downloaded but also distributed thousands of copyrighted works to users of peer-to-peer file-sharing networks. Id. at 493.

The trial evidence also supports the jury's determination that Tenenbaum willfully infringed plaintiffs' copyrights. He conducted his infringing activities while knowing that lawsuits were being brought against individuals who downloaded and distributed music without authorization. Id. He personally received multiple warnings from various sources – including his father in 2002, his college in 2003, and plaintiffs in 2005 – and he was warned that his activities could subject him to liability of up to $150,000 per infringement. Id. at 493-94. In spite of these warnings, he continued to download and distribute copyrighted materials; indeed, even after receiving Sony's 2005 cease and desist letter, trial evidence shows that defendant continued his activities for two more years, until Sony filed this lawsuit against him. Id. at 495.

Plaintiffs' 2005 letter also informed Tenenbaum about the impact of his activities on the music industry and instructed him to preserve all evidence of his activities, including any recordings he made available for distribution; yet in spite of these instructions, Tenenbaum had his operating system on his laptop reinstalled and its hard drive reformatted.  Id. at 494-95 and n.7.  Furthermore, as the First Circuit noted, "[s]trong evidence established that Tenenbaum lied in the course of these legal proceedings in a number of ways."  Id. at 495.  At trial, Tenenbaum admitted that he lied in responding to Sony's discovery requests about the scope of his conduct using online media distribution systems, his use of peer-to-peer networks, and the installment of such networks on his computer.  Id.  When he was confronted at trial with his attempts to shift blame for his actions to others – including a foster child living in his family's home, his sisters, a family house guest, and burglars – Tenenbaum finally admitted responsibility.  Id. at 496.  In short, there was ample evidence of willfulness and the need for deterrence based on Tenenbaum's blatant contempt of warnings and apparent disregard for the consequences of his actions.  In spite of the overwhelming evidence from which the jury could conclude that Tenenbaum's activities were willful, the award of $22,500 per infringement not only was at the low end of the range – only 15% of the statutory maximum – for willful infringement, but was below the statutory maximum for non-willful infringement.  Considering all of the aforementioned evidence, the jury's damage award was not so excessive as to merit remittitur.

**B.    Due Process Challenge**

I turn now to defendant's due process challenge.  See Tenenbaum, 660 F.3d at

515 n.28 ("If the district court determines that the jury's award does not merit common

law remittitur, the court and the parties will have to address the relationship between

the remittitur standard and the due process standard for statutory damage awards,

should the issue continue to be raised.").

### 1.    Standard

The First Circuit vacated the earlier due process analysis and strongly

suggested, without deciding, that the standard for evaluating the constitutionality of

statutory damages established in St. Louis, I.M. & S. Ry. Co. v. Williams, 251 U.S. 63

(1919) – rather than the Gore standard – should govern analysis of the constitutional

issue.   It noted that, in Gore, the Supreme Court did not overrule Williams, and that the

Supreme Court has not "suggested that the Gore guideposts [for evaluating punitive

damage awards] should extend to constitutional review of statutory damage awards."

660 F.3d at 513.  Further, the First Circuit explained that "concerns regarding fair

notice to the parties of the range of possible punitive damage awards present in Gore

are simply not present in a statutory damages case, where the statute itself provides

notice of the scope of the potential award." Id.  Finally, the court observed that the only

other circuit court to directly decide the issue applied the Williams test instead of Gore.

Id. (citing Zomba Enters., Inc. v. Panorama Records, Inc., 491 F.3d 574, 587 (6th Cir.

2007)).  See also Capitol Records, Inc. v. Thomas-Rasset, 799 F.Supp.2d 999, 1004

(D. Minn. 2011) (concluding that Williams, and not Gore, should govern the standard of

review for due process challenge to a statutory damages award under the Copyright

Act); Lowry's Reports, Inc. v. Legg Mason, Inc., 302 F.Supp.2d 455, 460 (D. Md. 2004)

(declining to apply <u>Gore</u> in due process challenge to statutory damages award under

Copyright Act, noting: "The unregulated and arbitrary use of judicial power that the

<u>Gore</u> guideposts remedy is not implicated in Congress' carefully crafted and reasonably

constrained statute.").

      Other courts have applied <u>Williams</u> to evaluate the constitutionality of statutory

damages provisions and awards.  <u>Centerline Equip. Corp. V. Banner Pers. Serv., Inc.</u>,

545 F.Supp.2d 768, 777-78 (N.D. Ill. 2008) (applying <u>Williams</u> to uphold due process

challenge to the statutory damages provision of Telephone Consumer Protection Act);

<u>Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, L.P.</u>, 329

F.Supp.2d 789, 808-09 (M.D. La. 2004) (same); <u>Texas v. Am. Blastfax, Inc.</u>, 121

F.Supp.2d 1085, 1090-91 (W.D. Tex. 2000) (same); <u>Verizon California Inc. v.

OnlineNIC Inc.</u>, No. 08-2832, 2009 WL 2706393, at * 6-7 (N.D. Ca. Aug. 25, 2009)

(applying <u>Williams</u> to uphold statutory damages award under AntiCybersquatting

Consumer Protection Act).

      Moreover, two of the three <u>Gore</u> "guideposts," <u>supra</u> note 2, do not logically

apply in the statutory damages context.  The third guidepost – disparity between the

punitive award and comparable civil penalties – is wholly inapplicable where the award

is within the statutory range authorized by Congress.  <u>See</u> <u>Thomas-Rasset</u>, 799

F.Supp.2d at 1006 ("The Copyright Act's explicit damages range is, itself, the very

guidepost that the Supreme Court urges this Court to heed.  Thus, comparing an in-

range statutory damages award to the authorized statutory damages range is

unhelpful.").  It is likewise inappropriate to consider the second guidepost – the ratio of

punitive damages to actual damages.  Congress gave a Copyright Act plaintiff the right

to elect statutory in lieu of actual damages, in part because it recognized that actual

damages are extremely difficult to measure and prove in a copyright case.  See F.W.

Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 224-25 (1952); Lowry's Reports,

302 F.Supp.2d at 460.  Furthermore, the Supreme Court has instructed that the validity

of a statutory damages award is "not to be tested" by comparing it to the actual

damages suffered.  Williams, 251 U.S. at 67.

    Defendant offers no case that has held that a statutory damages award must be

reviewed under Gore, nor one that has applied defendant's proposed "intelligent

amalgam" due process standard.  Def. Opening Br. on Remand at 8.  Thus, I evaluate

the constitutionality of the damages award under Williams.

### 2.    Application of Williams Standard

    Under Williams, which involved a challenge to a state statute setting an award

range for railroads that overcharged passengers, a statutory damages award comports

with due process as long as it "cannot be said to be so severe and oppressive as to be

wholly disproportioned to the offense or obviously unreasonable."  251 U.S. at 67.  The

constitutionality of the award must be assessed "with due regard for the interests of the

public, the numberless opportunities for committing the offense, and the need for

securing uniform adherence to" law.  Id.  The Williams standard is highly deferential.

Id. at 66-67 (noting "wide latitude of discretion" afforded to state legislatures in setting

damages awards). See also Zomba, 491 F.3d at 587 (describing review under Williams

as "extraordinarily deferential – even more so than in cases applying abuse-of-

discretion review.") (citing <u>Douglas v. Cunningham</u>, 294 U.S. 207, 210 (1935)); <u>cf.</u>
<u>Browning-Ferris Indus. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 281 (1989) (Brennan, J.,
concurring) (noting that the Supreme Court's "scrutiny of awards made without the
benefit of a legislature's deliberation and guidance would be less indulgent than our
consideration of those that fall within statutory limits."). The court is also sensitive to
the separation of powers issues raised by a challenge to a statutory damages range
determined by Congress. <u>See</u> <u>Tenenbaum</u>, 660 F.3d at 513 (noting that Congress is
authorized to set awards of damages under its Article I powers, and that concerns
could be raised by "intrusion" into that power).

Statutory damages have been available as a federal remedy for copyright
infringement since the Copyright Act of 1790. Act of May 31, 1790, ch. 15, §§ 2,6, 1
Stat. 124, 125. <u>See also</u> <u>Feltner</u>, 523 U.S. at 349-51 (discussing history of award of
statutory damages for copyright infringement). As discussed above, Congress elected
to give copyright holders the option of collecting statutory damages rather than actual
damages because of the difficulty of measuring and proving the latter. In amending the
Copyright Act's statutory damages provision in 1999, Congress found that infringement
causes public harms including "lost U.S. jobs, lost wages, lower tax revenue, and
higher prices for honest purchasers of copyrighted [works]." H.R. Rep. No. 106-216
(1999), 1999 WL 446444, at *3. The 1999 amendments, which increased penalties for
willful infringement, were expressly designed to address behavior like that of
Tenenbaum. <u>See</u> <u>Tenenbaum</u>, 660 F.3d at 500 (citing legislative history of the Digital
Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-

160, 113 Stat. 1774, which increased the minimum and maximum awards available under section 504(c)).[5]

Given the deference afforded Congress' statutory award determination and the public harms it was designed to address, the particular behavior of plaintiff in this case as explained above, and the fact that the award not only is within the range for willful infringement but also below the limit for non-willful infringement, the award is neither "wholly disproportioned to the offense" nor "obviously unreasonable."  It does not offend due process.

## III.   Conclusion

The verdict and damages award, as reinstated by the First Circuit, stand. Plaintiff's Motion to Strike, or in the Alternative, to Disregard Defendant's Reply Briefs (Docket # 75) is ALLOWED to the extent that the court disregards facts and arguments that are improperly raised.  Plaintiffs' Motion to Strike Defendant's Amended Further Submission (Docket # 81) is ALLOWED for failure to comply with LR 7.1(b)(3) and

---

[5] The relevant portion of the House Report reads:

By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works.  The advent of digital video discs, for example, will enable individuals to store far more material than on conventional discs and, at the same time, produce perfect secondhand copies . . . .  Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct.  Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action.  In light of this disturbing trend, it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct.  H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement.

H.R. Rep. No. 106-216 (1999), 1999 WL 446444, at *3.

because defendant has had ample opportunity for briefing and argument on the issue.

_____August 23, 2012_____                    _____/s/Rya W. Zobel_____
              DATE                                        RYA W. ZOBEL
                                              UNITED STATES DISTRICT JUDGE